IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDYWINE VILLAGE ASSOCIATES, | |
| Plaintiff, | |
| v. | CIVIL ACTION NO. 16-5209 |
| CARLINO EAST BRANDYWINE, L.P., et al., | |
| Defendants. | |

**MEMORANDUM**

**SCHMEHL, J. /s/ JLS**                                                                                    **MARCH 26, 2018**

The Sherman Act prohibits direct or indirect interference of competition thereby promoting competition as the most efficient regulator of economic activity. Any suppression of competition negatively impacts the price of goods and services, thereby directly affecting consumers. One such way suppression of competition can affect the public is through eminent domain or condemnation of land. Eminent domain allows the government or its agent to expropriate private property for public use, with payment of compensation.

At issue in this case is East Brandywine Township's taking of certain property from Brandywine Village Associates to create a competing shopping center and supermarket in their township. However, this Court need not determine whether a lawful taking occurred; this Court must determine whether a municipality has the authority to act in a way that produces anticompetitive restraints as a result of a taking. There are two issues this Court must address with regards to East Brandywine Township's motion to dismiss: 1) whether a municipality is subject to Section 1 of the Sherman Act when its conduct results in anticompetitive restraints performed as an act of government or state policy; and 2) whether common law unfair competition applies to non-competitors.

This opinion addresses the motion to dismiss on behalf of one Defendant, East Brandywine Township. For the reasons that follow, the motion will be granted.

## I. FACTS

Plaintiff Brandywine Village Associates ("BVA") is a Pennsylvania partnership that owns Brandywine Village Shopping Center. Brandywine Shopping Center is a retail shopping center located at 1239 Horseshoe Pike in East Brandywine Township. One of the named Defendants and focus of this Opinion, East Brandywine Township (the "Township"), has its municipal building at 1214 Horseshoe Pike in East Brandywine Township.

Brandywine Village Shopping Center was built in 1995 and was by all accounts a "successful retail center with a thriving supermarket anchor tenant." At the moment, however, the shopping center is without a supermarket (anchor tenant), affecting the local township which lacks a conveniently located supermarket. Prior to the shopping center losing its supermarket anchor tenant, the shopping center enjoyed stable occupancy from its other tenants. However, with the supermarket's departure and inability to sign a new anchor tenant, the once stable center is now struggling to retain its tenants.

Since 2008, Defendant Carlino has attempted to develop a shopping center, the East Brandywine Center – in close proximity to Brandywine Village Shopping Center – and sign Giant Food Stores supermarket as its anchor tenant. In 2011, Carlino and its representatives met frequently with Brandywine Township to discuss the development plan and intent to lease its anchor tenant space to Giant supermarket.

On October 3, 2014, the Township passed a resolution of condemnation of Brandywine Village's easements. On November 14, 2014, the Township filed a declaration of taking against Brandywine Village in the Chester County Court of Common Pleas. After numerous challenges

2

to Carlino's development plans and subsequent appeals by BVA concerning purported "non-waivable zoning defects," the Township conditionally approved Carlino's development plans in 2016.

On January 6, 2017, following another appeal by BVA, Judge Nagle of the Chester County Court of Common Pleas issued an Order denying BVA's appeal of the conditional approval of Carlino's development plan. In the Order, Judge Nagle states, "Pursuant to the MOU's terms, the Township has condemned certain easements located on Carlino's property that now benefit Brandywine's adjacent property, which will allow location of the Connector Road within those easement areas. We observe that the Township has not condemned the underlying fee within which the easements exist. Carlino has agreed to construct the road on its property to specifications consistent with its dedication to the Township as and for a public road." (ECF Doc. No. 79-2, at 9.)

On September 30, 2016, BVA filed this action against multiple defendants alleging violation of Section 1 of The Sherman Act, unfair competition, abuse of legal process, specific performance, and breach of contract. On May 9, 2017, this Court granted BVA leave to amend the complaint adding Defendant Giant Food Stores, LLC as a named Defendant. (Docket No. 104.) On May 23, 2017, Defendant East Brandywine Township moved to dismiss the amended complaint. (Docket No. 111.) Presently before this Court is the Township's motion to dismiss the complaint against BVA for failing to state a claim.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim

3

satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (citing Iqbal, 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679); see also *Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

### III. ANALYSIS

At issue is the Watters property and proposed "Connector Road" that would link U.S. Route 322, south of the Watters' Property and Brandywine Village Shopping Center, to North Guthriesville Road, north of the two parcels. The construction of the Connector Road requires the Township acquire certain portions of BVA's property; a taking opposed by BVA because it would directly and indirectly harm BVA's property rights and business operations. This road

would divide the Carlino development to the west from the Shopping Center to the east. BVA argues that the Township's actions would invade Brandywine Village's easements, create unfavorable traffic patterns, and reduce the shopping center's ability to compete with Carlino and the incoming Giant Food Stores supermarket. In addition to the taking, BVA objects to the alleged non-waivable zoning defects as averred in the Complaint, which include: "setback violations for the planned bank branch building; unsafe traffic design and movement; improper impervious coverage because of the Brandywine Village sewer plant existing by easement on the Watters Property; and deficiency in the total acreage of the final parcel to be developed." (ECF Doc. No. 104, at ¶ 157.)

1. <u>East Brandywine Township is immune from suit for Antitrust violations.</u>

Section 1 of the Sherman Act requires a plaintiff plead two elements: "(1) 'that the defendant was a party to a contract, combination . . . or conspiracy" and (2) 'that the conspiracy to which the defendant was a party imposed an unreasonable restraint on trade.'" *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). Because "every" agreement somewhat restrains competition, courts require proof that the challenged restraint *unreasonably* restrains competition. *American Needle, Inc. v. National Football League*, 560 U.S. 183, 189–90 (2010) (emphasis added).

However, States and by extension municipalities, are exempt from the Sherman Act for anticompetitive restraints executed as "act[s] of government." *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 370 (1991). This state action doctrine, also known as "*Parker* immunity," may apply to a municipality's restriction of competition recognized as an authorized implementation of state policy. *Id.* (citing *Parker v. Brown*, 317 U.S. 341 (1943) (relying on principles of federalism and state sovereignty concluding that the Sherman Act did

5

not apply to anticompetitive restraints imposed by the States)). But, municipalities are not automatically entitled to immunity from federal antitrust laws under the state action doctrine. *Commonwealth v. Susquehanna Area Regional Airport Authority*, 423 F.Supp.2d 472, 478 (M.D. Pa. 2006). "Instead, a municipality will be immune from such laws only if it engaged in 'the challenged activity pursuant to a clearly expressed state policy.'" *Id*.

This Court must first determine whether the Township's exercise of eminent domain is recognized as an authorized state policy protected under *Parker* immunity. "Courts in this district have held unambiguously that the power of eminent domain, when exercised by local municipalities and agencies, is an authorized implementation of state policy that cannot give rise to antitrust liability." (ECF Docket No. 111, at 6.). BVA argues the Township violated Section 1 of the Sherman Act when it: 1) "exercise[d] [ ] its eminent domain power to condemn land and easements necessary for the construction of a road"; and 2) "approv[ed] of certain of Carlino's development plans." (ECF Docket No. 104, at ¶ 175, ¶131-153.)

Although municipalities are immune from federal antitrust laws under the state action doctrine, immunity only applies when the challenged act is made pursuant to a "clearly expressed state policy"; this includes state policy with potentially anticompetitive results, such as eminent domain. *Susquehanna Area Regional Airport Authority*, 423 F.Supp.2d at 478. The "clearly expressed state policy" standard is defined by the Municipality Authorities Act ("MAA") which confers broad power upon local municipalities, including the power of eminent domain. 53 Pa.C.S.A. § 5601, § 5607(d)(15).

The obvious anticompetitive effects as a result of takings by eminent domain were foreseeable and contemplated by the Pennsylvania legislature when it enacted the

anticompetitive provision found in 53 Pa.C.S.A. § 5607(b)(2).[1] This reading is supported by ample authority in Pennsylvania case law which finds that the legislature clearly intended to grant broad power of eminent domain notwithstanding the potential for anticompetitive effects. *Susquehanna Area Regional Airport Authority*, 423 F.Supp.2d at480 (citing 53 Pa.C.S.A. § 5607(b)(2)). Specifically, the court in *Susquehanna* determined that the anticompetitive provision *did not limit a municipality's authority to displace competition as a result of a taking or condemnation*. (emphasis added).

The Pennsylvania Supreme Court in *Thompson Appeal* considered whether this anticompetitive provision limited a municipality's authority to displace competition; the court ultimately rejected the argument that the MAA expressly limited *Parker* immunity.[2] Pennsylvania's highest court, cited in *Susquehanna*, agreed that the legislature's "deliberate omission of the power *to acquire and hold property* [from the anticompetitive provision] shows a *clear legislative design* that the proviso was *not* to be a restriction upon the authority's right to condemn." *Id.* (*citing In re Condemnation of 49.0768 Acres (Thompson Appeal)*, 233 A.2d 237, 239 (Pa. 1967)). This reasoning makes perfect sense when one realizes that almost any condemnation or taking would have an adverse impact on someone. Thus, the court applied *Parker* immunity when a municipality displaced competition by a taking.

---

[1] The Pennsylvania legislature enacted the anticompetitive provision, which states: the purpose and intent of this chapter being to benefit the people of the Commonwealth by, among other things, increasing their commerce, health, safety, and prosperity and not to unnecessarily burden or interfere with existing business by the establishment of competitive enterprises; none of the powers granted by this chapter shall be exercised in the construction, financing, improvement, maintenance, extension or operation of any project or projects or providing financing for insurance reserves which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purpose. *Commonwealth v. Susquehanna Area Regional Airport Authority*, 423 F.Supp.2d 472, 480 (M.D. Pa. 2006) (citing 53 Pa.C.S.A. § 5607(b)(2)).

[2] The Pennsylvania Supreme Court concluded the MAA does not limit *Parker* immunity following the municipality's condemnation of a private airport for use as a municipal airport. *In re Condemnation of 49.0768 Acres (Thompson Appeal)*, 233 A.2d 237, 239 (Pa. 1967).

7

Here, the Township's use of its eminent domain power – alleged to have produced anticompetitive results – was a "clearly expressed state policy" under the MAA and protected under *Parker*. It is undisputed that, as a matter of state law, the Township has eminent domain authority. Taking the facts in BVA's Complaint as true, and assuming the Township's taking produced anticompetitive results, the Township is nevertheless protected under *Parker* and the MAA. Furthermore, the Township alleges that the taking was done to improve traffic safety and therefore considered a matter of public health and welfare.

However, several Courts of Appeal have foreclosed *Parker* immunity to States or municipalities engaged in "conspiratorial" behavior where the state or municipality participated in an agreement with a private actor resulting in a restraint of trade. *Omni Outdoor Advertising, Inc.*, 499 U.S. at 374. The United States Supreme Court clearly rejected this conspiracy exception argument in *Omni* and concluded that a governmental action "not in the public interest," or involving private actors in the restraint of trade, *does not* remove *Parker* immunity. *Id.* at 375 (distinguishing "in the public interest" for purposes of the Sherman Act from illegal activity contributing to the restriction of competition, i.e. violating state or federal law) (emphasis added).

The Court concluded there can be no such conspiracy exception because "few governmental actions are immune from the charge that they are 'not in the public interest' or in some sense 'corrupt,'" and crafting this exception would create unacceptable consequences. *Id.* at 371, 377. The Court also rejected the argument that a municipality could violate *Parker* when the nature of the regulation is substantively or procedurally defective, i.e. the taking was not adopted for the purpose of "promoting health, safety, morals or the general welfare of the

community" as the statute required. *Id.* at 372. Therefore, a mere substantive or procedural defect does not foreclose *Parker* immunity for municipalities.

Accordingly, "*any* action that qualifies as state action is '*ipso facto* . . . exempt from the operation of antitrust laws,'" with the exception of the market participant – which is inapplicable here. *Id.* at 379; *see also Susquehanna Area Regional Airport Authority*, 423 F.Supp.2d at 483 (concluding that "a market participant exception would eliminate a municipal authority's immunity from antitrust laws when it acts simply as another competitor in the marketplace"). This Court does not consider, nor should it consider, the Township a market participant in this case.

Here, BVA avers that the Township "exceeded its eminent domain authority" because the takings were not done "primarily for a public purpose" and engaged in an improper restraint of trade by conspiring with a private actor. (ECF Docket No. 104, at ¶ 178.) However, this argument is undermined by Judge Nagle's January 6, 2017 Order concluding the "Connector Road" in Carlino's plan submission was intended to be constructed and dedicated for public use. Even if Judge Nagle had not determined that the Tonwship's use of the "Connector Road" was in the public interest, BVA's argument against the Township still fails because the Township's action qualifies as an authorized state action and, under *Parker*, is exempt from the operation of the antitrust laws.

Additionally, BVA argues the Township and Carlino engaged in conspiratorial behavior to the detriment of BVA's business. Irrespective of any perceived "conspiratorial" behavior between the Township and Carlino, the Township's use of eminent domain is considered state action and thus immune from antitrust suits related to those powers. As considered above, the

Supreme Court rejected the conspiracy exception to *Parker* immunity; therefore, this Court refuses to create any such conspiracy exception in the context of eminent domain and *Parker*.

In its Response to the Township's Motion to Dismiss, BVA relies on Pennsylvania's Property Rights Protection Act ("PRPA"). (ECF Doc. No. 114, at 9 (citing 26 Pa.C.S.A. § 204(a))). However, BVA fails to account for all sections of the PRPA, especially subsection (b)(9), which excludes enforcement of subsection (a)[3] when: "The property is used or to be used for any road, street, highway, trafficway or for property to be acquired to provide access to a public thoroughfare for a property which would be otherwise inaccessible as the result of the use of eminent domain or for ingress, egress or parking of motor vehicles." 26 Pa.C.S.A. § 204(b)(9). Because the taking at issue involves a connector road, the PRPA is inapplicable.

Accordingly, the Township's motion to dismiss Count I, violation of Section 1 of the Sherman Act, is hereby granted.

2. <u>The Township is not liable for unfair competition because it is not a competitor of Brandywine Village Associates.</u>

BVA argues the Township engaged in "intentional and conspiratorial conduct that is contrary to honest commercial practice" violating unfair competition under Pennsylvania common law. (ECF Docket No. 104, ¶ 217.) BVA further avers the Defendants' predatory actions were calculated to "procure an unfair competitive advantage for Defendants Carlino and Giant through tortious and improper means, including predatory, exclusionary, and unfair conduct" as alleged in the First Amended Complaint. (ECF Docket No. 104, ¶ 218.)

The law against unfair competition is designed to protect consumers and business from deceptive or harmful business practices. However, the courts have not been consistent in its

---

[3] **(a) Prohibition:** Except as set forth in subsection (b), the exercise by any condemnor of the power of eminent domain to take private property in order to use it for private enterprise is prohibited. 26 Pa.C.S.A. § 204(a).

application.[4]  Although not rigidly applied, Pennsylvania occasionally recognizes the common law tort of unfair competition defined by the Restatement (Third) of Unfair Competition. *Giordano v. Claudio*, 714 F.Supp.2d 508, 521 (E.D. Pa. 2010); *see also Binary Semantics Ltd. v. Minitab, Inc.*, 2008 WL 763575, at *8 (M.D. Pa. 2008). Unfair competition under the Restatement (Third) applies when commercial relations are affected by engaging in a business or trade where harm occurs for practices relating to: 1) deceptive marketing, 2) trademark infringement, 3) appropriation of trade secrets and right of publicity, 4) or acts of practices violating federal or state statutes. Restatement (Third) of Unfair Competition § 1 (1995).

However, as the Township argues, the common law tort of unfair competition may be inapplicable as a matter of law if the parties are not competitors. *Binary Semantics Ltd.,* 2008 WL 763575, at *8. "While the Restatement (Third) of Unfair Competition does not explicitly state that an action may only lie against a competitor, federal courts have observed that 'it overwhelmingly suggests that to recover for unfair competition, one must be a competitor.'" (ECF Docket No. 10, at 17) (citing *Thermal Design, Inc. v. Am. Soc'y of Heating*, No. 07-C-765, 2013 WL 12094813, at *24 (E.D. Wis. June 12, 2013), *aff'd sub nom. Thermal Design Inc., v. Am. Soc'y of Heating, Refrigerating & Air-Conditioning Engineers, Inc.*, 755 F.3d 832 (7th Cir. 2014)).

The Township focuses this Court's attention to a number of Pennsylvania cases in relation to common law unfair competition precluding liability to non-competitors. (ECF Docket No. 111, at 13.) As the Third Circuit concluded in a case involving an insurance company's

---

[4] Unfair competition commonly refers to the passing off of a rival's goods as one's own, however, the courts "have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." *Synthes (U.S.A.) v. Globus Med., Inc.*, No. 04–1235, 2005 WL 2233441, at *8 (E.D. Pa. Sept.14, 2005) (citations omitted).

11

general liability insurance policy, "'competition' connotes an insured's relationship with other persons or entities supplying similar goods or services." *Granite State Ins. Co. v. Aamco Transmissions*, Inc. 57 F.3d 316, 319 (3d Cir. 1995); *see also Practice Management Assocs. v. Old Dominion Ins. Co.*, 601 So.2d 587 (Fla. Dist. Ct. App. 1992) (applying unfair competition "unambiguously only to actions affecting competitors"). The Third Circuit cites a number of cases addressing this issue. *Id.*; *see also Ruder & Finn, Inc. v. Seaboard Sur. Co.*, 422 N.E.2d 518, 522 (1981) (accepting central argument that the "primary concern in unfair competition is the protection of a business from another's misappropriation of the business' organization or its expenditure of labor, skill and money"); *see also Boggs v. Whitaker, Lipp & Helea, Inc.*, 784 P.2d 1273, 1275, *review denied*, 791 P.2d 535 (1990) (defining "unfair competition" as applying "only to acts against competitors"). Therefore, common law unfair competition requires the parties be competitors, i.e. supplying similar goods or services.

Here, BVA and the Township are clearly not in competition with each other. Even, ignoring the Township's status as a municipality, BVA and the Township do not provide similar goods and services. The Township is a municipality and BVA owns Brandywine Village Shopping Center, a retail shopping center. It is unreasonable for the Township to expect to defend itself in a lawsuit involving unfair competition when the two parties are not competitors in the broadest meaning of the word. Based upon the authority cited which dismissed suits against non-competitors, this Court rejects BVA's argument that the Township engaged in unfair competition.

Accordingly, the Township's motion to dismiss Count II, unfair competition, is hereby granted.

**IV.	CONCLUSION**

In the accompanying order, this Court grants Defendant East Brandywine Township's motion to dismiss Count I, violation of Section 1 of The Sherman Act, 15 U.S.C. § 1, and Count II, unfair competition.