IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRANDYWINE VILLAGE ASSOCIATES,

Plaintiff,

v.

CARLINO EAST BRANDYWINE, L.P., *et al*.,

Defendants.

CIVIL ACTION
NO. 16-5209

## MEMORANDUM

Schmehl, J.  /s/ JLS                                                                August   1, 2023

Defendants Carlino East Brandywine, L.P., Christina B. Watters, Katherine M. Kettlety, Frank E. Watters, Jr., and Thomas R. Watters ("Carlino") have filed a second motion to dismiss Brandywine Village Associates' ("BVA") First Amended Complaint ("FAC"). Defendant, The Giant Company ("Giant") joined in Carlino's motion to the extent it warrants dismissal of the counts contained in the FAC as to Giant. Carlino claims that this second motion to dismiss is appropriate and should be granted because of numerous state court rulings that "gut the core allegations in the FAC and preclude BVA's claims under the doctrines of collateral estoppel, *res judicata* and *Noerr Pennington* immunity." (ECF No. 271, p. 1.) For the reasons that follow, Carlino's motion to dismiss will be granted and BVA's First Amended Complaint will be dismissed with prejudice.

## I.    FACTS

In 1995, BVA built a shopping center on an eleven-acre parcel fronting Horseshoe Pike in East Brandywine Township called Brandywine Village Shopping Center. (ECF No. 104, ¶18.) Carlino owns the adjoining ten-acre property fronting Horseshoe Pike that it intends to develop

with a shopping center, anchored by a Giant supermarket, and the Connector Road. (ECF No. 104, ¶5.)  BVA summarized its allegations against Carlino as follows:

> Carlino's anticompetitive and conspiratorial acts have included, at a minimum:
>
> a. knowingly seeking and obtaining hasty municipal approval of multiple defective land use plans that violate applicable land use laws and regulations and improperly interfere with Brandywine Village's property rights and the property rights of other neighboring landowners;
>
> b. commencing an objectively baseless sham lawsuit against Brandywine Village and related parties – including Brandywine Village's individual partners and outside counsel – for anticompetitive purposes;
>
> c. conducting secret property development negotiations with [the Township] to violate the Sunshine Act and the Municipalities Planning Code repeatedly, to Brandywine Village's detriment;
>
> d. inducing the Township, through threats of sham litigation, to improperly exercise its eminent domain power in violation of Pennsylvania law primarily for Carlino's private benefit and to Brandywine Village's detriment, and as a means of circumventing valid, enforceable, and valuable easements that benefit Brandywine Village;
>
> e. actively and baselessly opposing Brandywine Village's efforts to enlarge its existing retail space to improve its ability to attract a new anchor supermarket tenant to the Brandywine Village Shopping Center;
>
> f. causing the predatory publication of literally false and misleading advertisements representing and/or implying that Carlino owns and has the right to dispose of Brandywine Village's property and the property of another neighboring landowner.

(ECF No. 104, ¶6.) BVA's allegations against Giant were as follows:

> Giant's anticompetitive, conspiratorial, predatory, and exclusionary acts have included, at a minimum:
>
> a. Making, or inducing Carlino to make, illegal offers to enter into anticompetitive agreements with Brandywine Village to eliminate supermarket competition in the relevant market;
>
> b. actively insisting upon and financially subsidizing the construction of a through-road that will inflict competitive harm on Brandywine Village and stifle

supermarket competition in the relevant market – even when Carlino and East Brandywine Township were prepared to proceed without such a road;

c. scheming so that one of Giant's major wholesale suppliers, which also held the lease to the supermarket space at Brandywine Village Shopping Center, would act against its own economic interest by declining to renew that lease, causing Brandywine Village's competitive supermarket space to become vacant;

d. expressly encouraging and agreeing with its business partner, Carlino, to engage in the specific anticompetitive and predatory conduct outlined above in paragraph 6, including Carlino's conduct relating to the land development plans, the sham tort action, and the objectively baseless condemnation proceeding; and

e. in conjunction with Carlino, actively investigating Brandywine Village's financial health to assess the impact of Giant's anticompetitive scheme, with a view toward Carlino's ultimate acquisition of Brandywine Village Shopping Center after its economic value has been undermined, thereby eliminating any possibility of supermarket competition from the neighboring parcel.

(ECF No. 104, ¶8.) BVA's FAC contains claims against Defendants for violation of the Sherman Act (Count I), unfair competition (Count II), abuse of legal process (Count III), specific performance of the Cross Easement Agreement (Count IV) and breach of the Cross Easement Agreement (Count V).

This action was stayed from August 8, 2018, until March 21, 2022, to allow the state court proceedings to be resolved. Since the denial of Carlino's first Motion to Dismiss, the State Courts have issued final and unappealable decisions that are binding on BVA and material to BVA's claims in this federal action. First, after holding a hearing, the Chester County Court of Common Pleas dismissed BVA's challenge to the condemnation and upheld the public purpose of the condemnation to construct the Connector Road, in a decision that the Commonwealth Court affirmed, and the Supreme Court declined to review. *Condemnation of Fee Simple Title to 0.069 Acres*, 2018 WL 3213113, *9-10 (Pa. Commw. Ct. July 2, 2018), *app. den.*, 202 A.3d 684 (Pa. 2018). Second, the Pennsylvania Superior Court affirmed the Court of Common Pleas' decision granting summary judgment to Carlino and against BVA, holding that the easements set

forth in the 1994 Cross Easement Agreement were terminated by the condemnation. *Carlino East Brandywine, L.P. v. Brandywine Village Association*, 197 A.3d 1189 (Pa. Super. Ct. 2018). Third, the Commonwealth Court affirmed the Township's June 2019 approval of Carlino's land development plan and rejected all BVA's objections to that development plan in a decision that the Pennsylvania Supreme Court declined to review. *Brandywine Village Assocs. v. East Brandywine Twp. Bd. of Sup'rs*, 2021 WL 3046662 (Pa. Commw. Ct. July 20, 2021), *rearg. den.*, (Pa. Commw. Ct. Sept. 9, 2021), *app. den.*, 275 A.3d 957 (Pa. 2022). Carlino therefore has final approval to construct its shopping center, anchored with the Giant food store, and the Connector Road. Lastly, the Court of Common Pleas upheld Carlino's damages action against BVA and its counsel (the "Carlino Tort Action"), having denied BVA's four different sets of objections to the Carlino Tort Action.

## II.    **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) governs the Court's motion to dismiss analysis. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (*citing Iqbal,* 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's

liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"
*Id.* (quoting *Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1)
"[i]t must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should
identify allegations that, 'because they are no more than conclusions, are not entitled to the
assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court
should assume their veracity and then determine whether they plausibly give rise to an
entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)
(*quoting Iqbal*, 556 U.S. at 675, 679). *See Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d
560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

In our analysis of a motion to dismiss, the Court of Appeals allows us to also consider
documents "attached to or submitted with the complaint, and any 'matters incorporated by
reference or integral to the claim, items subject to judicial notice, matters of public record,
orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Tp. School Dist.*, 452
F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice
& Procedure § 1357 (3d ed. 2004)).

## III.   DISCUSSION

BVA focuses much of its opposition to Carlino's second motion to dismiss on whether
it is procedurally proper to file such a motion in light of Carlino's previous unsuccessful motion
to dismiss. After the denial of the first motion to dismiss, this action was stayed "in favor of the
state court actions" so that it could later be litigated "in a more streamlined and simplified
discovery process." (ECF No. 201.) After the conclusion of the state court matters, Carlino filed
a second motion to dismiss. While Rule 12(g) states that "a party that makes a motion under

[Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion," that is inapplicable to the instant matter, as some of the arguments and facts set forth in Defendants' second motion did not exist at the time the original motion to dismiss was filed.[1] The circumstances that existed when the first motion to dismiss was decided have changed drastically in the intervening years, and the conclusion of the state court matters has provided new facts in support of dismissal that were not available at the time of the first motion.[2] Accordingly, I will decide Defendants' second motion to dismiss on the merits and take into consideration the changed circumstances that have resulted from numerous state court proceedings.

A. **Noerr Pennington Immunity**

The *Noerr Pennington* doctrine protects parties who petition the government for redress from claims arising in response to that petitioning. *See Trustees of University of Pennsylvania v. St. Jude Children's Research Hosp.*, 940 F. Supp. 2d 233, 239 (E.D. Pa. 2013) (*Noerr-Pennington* immunity arose in antitrust context). The *Noerr Pennington* doctrine seeks to enforce the First Amendment guarantees that all citizens have the right to petition any branch of the government, including the judiciary. *See A.D. Bedell Wholesale Co. v. Phillip Morris Inc.*, 263

---

[1] Courts in this Circuit have allowed successive motions to dismiss where circumstances change following the first motion and create an argument or defense that could not have been raised in the first motion. *Drennen v. Comm. Bank of Northern Virginia*, 2009 WL 440960 at *2 (W.D. Pa Feb. 23, 2009) (court allowed successive motion to dismiss where separate class action settlement barred plaintiff's claims following the initial motion to dismiss); *Product Source Int'l, LLC v. Foremost Signature Ins. Co.*, 234 F. Supp. 3d 619 at n. 4 (D.NJ. 2017) (second motion to dismiss allowed where voluntary payment defense unavailable at time of first motion to dismiss).

[2] In the alternative, if it is determined that a second motion to dismiss in this situation is improper, the Court construes Defendants' motion as a motion for reconsideration of the Court's March 27, 2018, order denying Defendants' first motion to dismiss. A motion for reconsideration is appropriate in cases of: (1) an intervening change in controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Café v. Max Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999.) There is clearly new evidence available based upon the outcomes of the state court proceedings that was not available to the Court at the time of its prior decision. Accordingly, even if this motion is construed as a motion for reconsideration, the Court will grant it and dismiss Plaintiff's First Amended Complaint.

F.3d 239, 250 (3d Cir. 2001). This protection is afforded even if such action is anticompetitive or monopolistic because the First Amendment right to petition the government is not conditioned upon motive. *Id.*

To pierce *Noerr Pennington* immunity, a party must demonstrate that the petitioning party engaged in "sham" petitioning to interfere directly with business relationships of a competitor. *See Eastern R.R. President Conference v. Noerr Motor Freight*, 365 U.S. 127, 144 (1961). A "'sham' situation involves a defendant whose activities are not genuinely aimed at procuring favorable government action" and "not one who genuinely seeks to achieve his governmental result" but rather simply uses the petitioning process as an anticompetitive tool. *City v. Omni*, 499 U.S. 365, 381 (1991).

Courts have interpreted this "sham" exception extremely narrowly so as to not discourage access to the judicial process and right to petition the government. *Takeda Pharm. Co. Ltd. v. Zydus Pharms (USA) Inc*., 2021 WL 3144897, at *11 (D.N.J. Jul. 26, 2021) (sham litigation exception is narrow); *VIM, Inc. v. Somerset Hotel Ass'n*, 19 F. Supp. 2d 422, 426 (W.D. Pa 1998) ("sham exception" has very narrow scope). When analyzing the sham exception, courts apply a two-part test to determine if the narrow exception applies. *Campbell v. Pennsylvania Sch. Bds. Ass'n*, 972 F.3d 213 (3d. Cir. 2019). First, the plaintiff has the burden of proving that the suit is "objectively baseless" in that "the pursuit of claims [was] so baseless that no reasonable litigant could realistically expect to secure favorable relief." *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc. (PREI)*, 508 U.S. 49, 60 (1993). If an "objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome," the suit is immunized. *Id.*

A court can decide the question as to whether the state court proceeding was "objectively baseless" on a motion to dismiss because the question is not whether the defendant thought the facts constitute probable cause, but whether the court thinks they did, objectively. *Id.* at 63. If the court finds that probable cause existed, the inquiry ends there, and *Noerr Pennington* immunity governs. *Campbell*, 972 F.3d at 219. If the challenged litigation is objectively meritless, a court may then examine the litigant's subjective motivation to see if the actual motivation was to dragoon the "governmental" process into a competitive tool. *PREI*, 508 U.S. at 60.

### 1. Antitrust claim

BVA's antitrust claim is based upon Carlino's support of the condemnation action, Carlino's seeking approval of its development plans and Carlino's filing of the state court tort action against BVA. Carlino claims that all this activity is petitioning of the government and none of it is objectively baseless and therefore not a "sham," so BVA's antitrust claim is barred by the *Noerr Pennington* doctrine. (ECF No. 271-2, p. 18.) In response, BVA argues that *Noerr Pennington* does not apply in this matter because BVA has adequately pled sham petitioning and none of the legal proceedings that form the basis for BVA's claims have been decided in Carlino's favor. (ECF No. 279, p. 13.)

BVA alleged in its First Amended Complaint that the Carlino Tort Action and Carlino's attempted intervention in the condemnation were objectively baseless and therefore a sham. (ECF No. 104, ¶¶ 188-195, 226-232.) BVA also alleges that Carlino's 2011, 2015 and 2016 land development plans were "baseless." (*Id.,* ¶¶ 131-153.) I will examine each alleged instance of sham petitioning below.

As to the Carlino Tort Action, there is no dispute between the parties that this is the type of petitioning to which *Noerr Pennington* immunity applies. To pierce *Noerr Pennington*

immunity and proceed with the instant antitrust suit, BVA must prove that the Carlino Tort Action was objectively baseless and therefore, not immune. As discussed above, BVA filed four separate sets of preliminary objections to the Carlino Tort Action, all of which were overruled by the Court of Common Pleas. Clearly, based upon these four different court rulings confirming the propriety of Carlino's tort complaint, Carlino had probable cause to file this tort action. Carlino's state court action is not the type of suit where "no reasonable litigant could realistically expect success on the merits" based upon the overruling of four different sets of objections. Further, a review of the allegations contained in the tort action shows that Carlino had sufficient probable cause to file said action.

BVA makes much of the fact that the Carlino Tort Action has not yet been decided and therefore cannot be said to have ended in Carlino's favor. However, that fact is irrelevant, as the standard for sham petitioning is *not* whether the allegedly baseless cause of action concluded in favor of the petitioner. Rather, the test is whether a reasonable litigant could expect success on the merits. As Carlino has survived four rounds of BVA objections, Carlino clearly had probable cause to file the tort action and it would not be unreasonable to expect success on the merits. BVA cannot prove that the tort action is objectively baseless, the Carlino Tort Action is not sham petitioning and *Noerr Pennington* immunity must apply to this claim. Therefore, the Carlino Tort Action cannot serve as a basis for BVA's antitrust claim.

Next, BVA argues that Carlino's "petitioning of the Township to bring the condemnation action" is also sham petitioning because it violated Pennsylvania's Sunshine Act and involved threats of sham litigation. (ECF No. 279, p. 13.)[3] However, the condemnation has been concluded in the state courts, including through multiple rounds of appeals, and all BVA's objections to the condemnation have been overruled, including alleged violations of

---

[3] BVA admits that it has never alleged that the condemnation action itself was a sham. (ECF No. 279, p. 13.)

Pennsylvania's Sunshine Act and threats of sham litigation allegedly made by Carlino. (*See* 9/8/17 decision of the Honorable Edward Griffith, ECF No. 271-2, Ex. A.) Because the condemnation is completed and BVA's arguments regarding Carlino's dealings with the Township in support of the condemnation have been overruled, Carlino's actions cannot be considered "sham petitioning." Accordingly, BVA's argument that Carlino's involvement with the Township in encouraging the condemnation was a sham is insufficient to circumvent *Noerr Pennington* immunity, as the state court overruled any objections to Carlino's conduct and it therefore cannot be found to have been objectively baseless.

The First Amended Complaint alleges that Carlino filed three "baseless" land development plans referred to as the 2011 Plan, the 2014 Plan and the 2015 Plan. (ECF No. 104, ¶¶ 131-153.) There is no dispute that Carlino also filed a 2018 Plan that was approved and affirmed on appeal. To bolster its claims of sham litigation to avoid application of *Noerr Pennington*, BVA argues that the 2018 Plan that was submitted by Carlino, approved by the Township and affirmed by the Commonwealth Court in 2019 is a "*completely different* land development plan," and that the three prior plans were shams. (ECF No. 279, p. 9) (emphasis in original.) First, I note that BVA made no such claim in its First Amended Complaint in this matter. Further, a review of that pleading shows that BVA alleged that "[c]ontinuously since at least late 2008, Carlino has intended to develop the Watters property with a retail shopping center that will feature a Giant supermarket as its anchor tenant." (ECF No. 104, ¶89.) Regarding the 2011 plan, BVA took issue with the Connector Road regarding ingress and egress and management of stormwater. (*Id.*, ¶132.2.) As to the 2014 plan, BVA claimed that it "improperly disrupted [BVA's] easements"; the bank pad violated a setback provision; and the Connector Road provided deficient access to the BVA center. (*Id.* ¶137.) Then regarding the 2015 Plan,

BVA made the same allegations: "The 2015 Carlino Development Plan once again carried over substantially the same disruptions to [BVA's] easements and the same non-waivable violations of applicable zoning and land use laws that were contained in the 2014 Carlino Development Plan." (*Id.* ¶147.) Pursuant to the Memorandum of Understanding that was entered into between Carlino and the Township, the final approved plan was required to be "in substantial conformity with the Final Plans approved by the Board on August 7, 2011…" Accordingly, the final 2018 Plan could only be approved if it was "in substantial conformity" with the 2011 Plan. Clearly, the approved 2018 Plan was substantially the same as the prior plan versions and BVA's argument that the 2018 Plan is a "completely different land development plan" is disingenuous at best and a fabrication at worst.

As to Carlino's land development plans as a whole, BVA does not dispute that this is the type of petitioning that is protected by *Noerr Pennington* immunity. Clearly, a property owner has the right to file the necessary documentation to develop its own property. Since the 2018 Plan was eventually approved by the Township and confirmed by the Commonwealth Court, BVA cannot prove that these development plans were objectively baseless. There is no dispute that the land development plans that Carlino submitted for its property can be "reasonably calculated to elicit a favorable outcome" in the eye of an objective litigant, as the 2018 Plan was eventually approved and therefore, did have a favorable outcome. Accordingly, Carlino's land development plans are protected petitioning activities, cannot be found to be sham petitioning and to the extent BVA's antitrust claim is based upon them, it must fail.

The last proceeding that BVA alleges is a sham is Carlino's attempt to intervene in the condemnation. This argument is similar to BVA's argument that petitioning the township to bring the condemnation was a sham because it violated Pennsylvania's Sunshine Law. Much like

the Sunshine Law argument, the condemnation in this matter is completed, all appeals are exhausted, and BVA's easements have been condemned. It is true that in the condemnation proceeding, BVA objected to Carlino's intervention, and it was disallowed. However, even if Carlino's attempt to do so was unsuccessful, there are occasions where third parties have been permitted to intervene in condemnation proceedings. *See In re Condemnation by Borough of Economy,* 2009 WL 9098659 (Pa. Commw., June 9, 2009); *In re a Condemnation Proceeding in Rem by the Redevelopment Authority for the City of Phila. Cty*, 2012 WL 8705081 (Pa. Commw., Apr. 24, 2012); *Kovacs v. Redevelopment Authority of the City of Phila.*, 328 A.2d 545 (Pa. Commw, Nov. 26, 1974). Although Carlino's attempted intervention was ultimately unsuccessful, it cannot be said it was objectively baseless. Therefore, Carlino's attempt to intervene in the condemnation was not sham petitioning and *Noerr Pennington* immunity must apply.

Lastly, despite there being no such allegations pled in the First Amended Complaint, BVA argues that it has not just alleged a single instance of sham petitioning, but rather that it has alleged a "series of sham legal proceedings brought for an anticompetitive purpose." This distinction is important, according to BVA, because a different test applies if a single sham proceeding is pled versus a series of sham proceedings. (ECF No. 279, p. 16.) BVA claims that its alleged series of sham petitions consisted of Carlino's three land development plans, Carlino's motion to intervene in the condemnation case, and the Carlino Tort Action. (*Id.*) BVA argues that in the case of a **series** of sham legal proceedings, a subjective motivation test is required, as opposed to the two-part test for objective baselessness typically used to determine if the sham exception applies. *See Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162,

180 (3d Cir. 2015). However, as BVA made no such allegations of a "series" of sham legal proceedings in its FAC, this argument must fail.

Even if it could be said that BVA properly pled a **series** of sham legal proceedings, the sham exception does not apply here to circumvent *Noerr Pennington* immunity. When a party alleges a series of legal proceedings, the sham litigation standard that governs is different. "This inquiry asks whether a series of petitions were filed with or without regard to merit and for the purpose of using the governmental process (as opposed to the outcome of that process) to harm a market rival and restrain trade. In deciding whether there was such a policy of filing improper petitions, a court should perform a holistic review that may include looking at the defendant's filing success—i.e., win-loss percentage—as circumstantial evidence of the defendant's subjective motivations." *Hanover 3201 Realty, LLC,* 806 F.3d at 180. If more than an insignificant number of filings have objective merit, a defendant likely did not have a policy of filing "willy-nilly without regard to success." *Id., citing USS–POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council, AFL-CIO,* 31 F.3d 800, 811 (9th Cir. 1994). A high percentage of meritless or objectively baseless proceedings, on the other hand, will tend to support a finding that the filings were not brought to redress any actual grievances. *Id., citing City of Columbia v. Omni Outdoor Adver.,* 499 U.S. 365, 380 (1991).

Although BVA may be correct in arguing that a **series** of filings by Carlino requires a more subjective analysis, it overlooks the fact that in applying that subjective test, courts may look at a defendant's filing success. In examining Carlino's conduct, there is clearly no series of filing petitions or proceedings for the purpose of causing harm to BVA. With the exception of its attempts to intervene in the condemnation proceedings, every petition or action filed by Carlino has been found to have objective merit. In fact, not only do those petitions or actions have

objective merit, but they were also successful at the state court level. Further, the only action not yet completed in the state court clearly has objective merit because it has survived four rounds of objections filed by BVA. In performing a "holistic review" and examining Carlino's filing success as circumstantial evidence of its subjective motivations, I find that the vast majority of Carlino's filings were ultimately successful, had objective merit and that Carlino did not have a policy of bringing petitions for the purpose of using the governmental process to harm a market rival.

As none of the proceedings instituted by Carlino are "objectively baseless," the first prong of the test for sham petitioning cannot be met and there is no need to continue to the second prong of the analysis. I find that all Carlino's actions were "genuinely aimed at procuring favorable government action," *City v. Omni*, 499 U.S. at 381, and none of the state court matters commenced by Carlino fall within the sham exception to *Noerr Pennington* immunity. A review of the state court proceedings, opinions and appeals shows that Carlino had, at a bare minimum, probable cause to file its land development plans, probable cause to file the Carlino Tort Action, and probable cause for its involvement in the condemnation. Accordingly, BVA's antitrust claim contained in Count I of the First Amended Complaint is barred by *Noerr Pennington* immunity and dismissed with prejudice.

### 2.  State law claims

BVA also brings claims in its First Amended Complaint for state law unfair competition and abuse of legal process. Where state law tort claims are based on the same petitioning activity as the antitrust claims, those tort claims also fail under the *Noerr Pennington* doctrine. *Upper Gwynedd Equities*, 2022 WL 16927795, at *3, *citing Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 128 (3d Cir. 1999). In the instant matter, BVA's claim for unfair competition is based

upon the same petitioning activity as its antitrust claim. (ECF No. 104, ¶¶216-221.) Accordingly, that claim must fail due to Carlino's *Noerr Pennington* immunity.

As to BVA's abuse of process claim, it argues that the Carlino Tort Action and Carlino's involvement in the condemnation action constitute abuse of process. (*Id*., ¶¶ 222-234.) As discussed fully above, both the Carlino Tort Action and Carlino's involvement in the condemnation are protected petitioning under the *Noerr Pennington* doctrine and therefore, cannot form the basis for BVA's abuse of process claim. Accordingly, BVA's abuse of process claim must also fail.

### B.  Specific Performance

Plaintiff's First Amended Complaint sought specific performance of the easements contained in the Cross Easement Agreement against the individual Defendants and Carlino. (ECF No. 104, ¶¶ 236-242.) However, the State Court has determined that the easements contained in the Cross Easement Agreement were terminated, and BVA agrees that Count IV of its complaint for specific performance is now moot and should be dismissed. (*See* ECF No. 294.) As this claim is moot, this Court no longer has subject matter jurisdiction over it, and it must be dismissed. *See Brown v. Philadelphia Housing Auth.,* 350 F.3d 338, 343 (3d Cir. 2003) (nothing that district court lacks subject matter jurisdiction if claim has become moot while case was pending before the court.)

### C.  Breach of Cross-Easement Agreements

Lastly, BVA claims that the Individual Defendants breached their duty to cooperate under the Cross Easement Agreement because they did not prevent Carlino from filing development plans for approval and from entering the Memorandum of Understanding with the

Township to enable the condemnation, and that therefore, BVA is entitled to contract damages. (ECF 104, ¶¶245-247.)

It is undisputed that the state court ruled that the condemnation in question properly terminated BVA's easements as contained in the Cross Easement Agreement. See 9/20/17 opinion, 197 A.3d 1189 (Pa. Super. Ct. Oct. 16, 2018). In its litigation to enforce the Cross Easement Agreement, BVA sought extensive relief for breach of that agreement. The Court ruled against BVA in that matter and found there was no breach. Accordingly, BVA cannot now, in this matter, collect damages for breach of the easement agreement. If BVA wanted to seek damages for the condemnation of its easements, it needed to seek compensation in the condemnation matter, which it did. BVA is not now permitted to obtain monetary damages for alleged breach of an agreement that the state court found was terminated. 197 A.3d 1189

### D. **Defendant Giant**

First, BVA's claims against Giant for alleged Sherman Act violations must fail, as such violations require an illegal concerted action by defendants, which is clearly lacking from the instant matter. As discussed above, Carlino's conduct was nothing more than protected petitioning of the government for redress, and there is no concerted action between Carlino and Giant that gives rise to Sherman Act liability. Further, BVA's claim for unfair competition against Giant must also be dismissed, as Giant (a supermarket operator) is not a competitor of BVA (a commercial landlord) and they do not "supply similar goods or services," *Giordano v. Claudio*, 714 F. Supp.2d 508, 523 (E.D. Pa. 1999), and therefore are not in competition with each other.

### E. **BVA's Motion for Attorneys' Fees**

As I have determined that Defendants' second Motion to Dismiss was appropriate and

granted the relief sought by Defendants, BVA's motion for attorneys' fees will be denied, as Carlino clearly did not file the motion to dismiss in bad faith.

**IV.**     **<u>CONCLUSION</u>**

For the reasons set forth above, this Court grants the Motion to Dismiss of Defendants that was joined in by Defendant, Giant. Plaintiff's First Amended Complaint is dismissed with prejudice. BVA's Motion for Attorneys' Fees is denied.